RECEIVED

JUN 17 2013

AT 8:30_____ M
WILLIAM T. WALSH, CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. |
| | : | |
| v. | : | Criminal No. *13 - 407 -JLL* |
| | : | |
| ROBERT FIORELLO, | : | 18 U.S.C. §§ 2, 894(a)(1), |
| a/k/a "Bobby," and | : | 1962(d) and 1963 |
| WILLIAM PANZERA, | : | |
| a/k/a "Billy" | : | |
| | : | |
| | : | |

I N D I C T M E N T

The Grand Jury charges:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise
indicated:

The Enterprise

1.    The members and associates of the Genovese organized
crime family of La Cosa Nostra constituted an "enterprise," as
defined in Title 18, United States Code, Section 1961(4), that is,
a group of individuals associated in fact (hereinafter the
"Genovese crime family" and the "enterprise").  The enterprise
constituted an ongoing organization whose members functioned as a
continuing unit for a common purpose of achieving the objectives
of the enterprise.  The Genovese crime family engaged in, and its
activities affected, interstate and foreign commerce.  The
Genovese crime family was an organized criminal group that
operated in the District of New Jersey and elsewhere.

2.   La Cosa Nostra operated through organized crime families. Five of these crime families – the Bonanno, Colombo, Gambino, Genovese and Luchese crime families – were headquartered in New York City, and supervised criminal activity in New York, in other areas of the United States and, in some instances, in other countries.  Another crime family, the Decavalcante crime family, operated principally in New Jersey, but from time to time also in New York City.

3.   The ruling body of La Cosa Nostra, known as the "Commission," consisted of leaders from each of the crime families.  The Commission convened from time to time to decide certain issues affecting all of the crime families, such as rules governing crime family membership.

4.   The Genovese crime family had a hierarchy and structure. The head of the Genovese crime family was known as the "boss." The Genovese crime family boss was assisted by an "underboss" and a counselor known as a "consigliere."  Together, the boss, underboss and consigliere were the crime family's "administration."  With the assistance of the underboss and consigliere, the boss was responsible for, among other things, setting policy and resolving disputes within and between La Cosa Nostra crime families and other criminal groups.  The administration further supervised, supported, protected and

disciplined the lower-ranking participants in the crime family. In return for their supervision and protection, the administration received part of the illegal earnings generated by the crime family. Members of the Genovese crime family served in an "acting" rather than "official" capacity in the administration on occasion due to another administration member's incarceration or ill health, or for the purpose of seeking to insulate another administration member from law enforcement scrutiny. Further, on occasion, the Genovese crime family was overseen by a "panel" of crime family members that did not include the boss, underboss and/or consigliere.

5. Below the administration of the Genovese crime family were numerous "crews," also known as "regimes" and "decinas." Each crew was headed by a "captain," also known as a "skipper," "caporegime" and "capodecina." Each captain's crew consisted of "soldiers" and "associates." The captain was responsible for supervising the criminal activities of his crew and providing the crew with support and protection. In return, the captain often received a share of the crew's earnings.

6. Only members of the Genovese crime family could serve as a boss, underboss, consigliere, captain or soldier. Members of the crime family were referred to on occasion as "goodfellas" or "wiseguys," or as persons who had been "straightened out" or who had their "button." Associates were individuals who were not

3

members of the crime family, but who nonetheless engaged in criminal activity for, and under the protection of, the crime family.

7.  Many requirements existed before an associate could become a member of the Genovese crime family.  The Commission of La Cosa Nostra from time to time limited the number of new members that could be added to a crime family.  An associate was also required to be proposed for membership by an existing crime family member.  When the crime family's administration considered the associate worthy of membership, the administration then circulated the proposed associate's name on a list given to other La Cosa Nostra crime families, which the other crime families reviewed and either approved or disapproved.  Unless there was an objection to the associate's membership, the crime family then "inducted," or "straightened out," the associate as a member of the crime family in a secret ceremony.  During the ceremony, the associate, among other things: swore allegiance for life to the crime family above all else, even the associate's own family; swore, on penalty of death, never to reveal the crime family's existence, criminal activities and other secrets; and swore to follow all orders issued by the crime family boss, including swearing to commit murder if the boss directed it.

## Methods and Means of the Enterprise

8.   The principal purpose of the Genovese crime family was to generate money for its members and associates.  This purpose was implemented by members and associates of the Genovese crime family through various criminal activities, including extortion, fraud, bribery, illegal gambling and loansharking.  The members and associates of the Genovese crime family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9.   Although the primary purpose of the Genovese crime family was to generate money for its members and associates, the members and associates at times used the resources of the family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the family.  For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10.   The members and associates of the Genovese crime family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities.  That conduct included a commitment to murdering persons, particularly members or associates of

5

organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11.   Members and associates of the Genovese crime family often coordinated criminal activity with members and associates of other organized crime families.

12.   The defendant WILLIAM PANZERA participated in the operation and management of the enterprise.   At various times, the defendant WILLIAM PANZERA was an associate within the Genovese crime family.

<u>COUNT ONE</u>
(Extortionate Collection of Credit Conspiracy)

13.   From at least in or about February 2008 through in or about May 2008, both dates being approximate and inclusive, within the District of New Jersey, the defendants

ROBERT FIORELLO, and
WILLIAM PANZERA,

together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #1.

In violation of Title 18, United States Code, Section 894(a)(1).

<u>COUNT TWO</u>
(Extortionate Collection of Credit)

14. From at least in or about February 2008 through in or about May 2008, both dates being approximate and inclusive, within the District of New Jersey, the defendants

ROBERT FIORELLO, and
WILLIAM PANZERA,

together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #1.

In violation of Title 18, United States Code, Sections 894(a)(1) and 2.

<u>COUNT THREE</u>
(Collection of Unlawful Debt Conspiracy)

15. The allegations contained in paragraphs 1 through 12 are realleged and incorporated as if fully set forth in this paragraph.

16. From at least in or about February 2008 through in or about May 2008, both dates being approximate and inclusive, within the District of New Jersey, defendant

WILLIAM PANZERA,

being a person employed by and associated with the Genovese crime family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and

7

indirectly, in the conduct of the affairs of that enterprise through the collection from John Doe #1 of unlawful debt, as that term is defined in Title 18, United States Code, Section 1961(6), that is: debts that were unenforceable under New Jersey State law, that is: New Jersey Statute 2C:21-19, in whole and in part as to principal and interest because of the law relating to usury and were incurred in connection with the business of lending money and a thing of value at a rate usurious under New Jersey State law, where the usurious rate was greater than 50% per annum.

In violation of Title 18, United States Code, Sections 1962(d) and 1963.

A TRUE BILL

PAUL J. FISHMAN
United States Attorney

8

CASE NUMBER: _13 cr 407 - JLL_

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

Robert Fiorello and William Panzera

# INDICTMENT FOR

18 U.S.C. §§ 2, 894(a)(1), 1962(d) and 1963

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2013 JUN 17 PM 2: 22

**PAUL J. FISHMAN**
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

JACQUELYN M. KASULIS/AMANDA HECTOR
*SPECIAL ASSISTANT U.S. ATTORNEYS*
718-254-6103/718-254-6212

USA-48AD 8
(Ed. 1/97)